58 CCPA

**JACQUES ISLER CORP., Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5389.**

United States Court of Customs and Patent Appeals.

Nov. 25, 1970.

---

**1400**

Brooks & Brooks, New York City, attorneys of record, for appellant. Eugene F. Blauvelt, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

McMANUS, Judge.

This appeal is from the decision and judgment of the United States Customs Court, First Division,[1] overruling the importer's protest against the collector's classification of certain "hoods", made from hare's fur clipped from the skin and intended for use in the manufacture of women's hats, as "headwear, of fur felt" under items 703.50 and 703.55 of the Tariff Schedules of the United States (TSUS). The importer claims the merchandise should be classified and dutied as "other headwear" under item 703.75, TSUS. We affirm.

The pertinent TSUS provisions read:

Headwear, of fur felt:[2]

\*     \*     \*     \*     \*     \*     \*     \*

For other persons:

\*     \*     \*     \*     \*     \*     \*     \*

| Item | | |
|---|---|---|
| 703.50 | Valued over $24 but not over $30 per dozen | 40% ad val. |
| 703.55 | Valued over $30 per dozen | $6.80 per doz.+ 10.5% ad val. |

\*     \*     \*     \*     \*     \*     \*     \*

| 703.75 | Other headwear | 17.5% ad val. |

General Headnote 9(f) (i):

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "con-taining", when used between the description of an article and a material (e. g., "furniture *of* wood", woven fab-

---

1. Jacques Isler Corp. v. United States, 63 Cust.Ct. 283, C.D. 3909 (1969).

2. It should be observed that the present merchandise was imported in 1964, prior to enactment of the Tariff Schedules

Technical Amendments Act of 1965, Public Law 89–241, which changed the superior heading of items 703.20–703.55 from "headwear, of fur felt" to "headwear, of fur not on the skin."

rics, *wholly of* cotton", etc.) have the following meanings:

(i) "of" means that the article is wholly or in chief value of the named material;

General Headnote 10(a):

(a) the general, schedule, part, and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon *are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been* or may be *developed under* administrative or *judicial rulings;* [Emphasis supplied.]

The facts are not in dispute. It appears from the record that the imported merchandise is made from loose, blown rabbit fur which is allowed to fall over a rotating, perforated cone or dome having a suction fan underneath it. In combination with the suction, hot water is sprayed on the fur initially causing the fur fibers to compact and interlock. The resultant formed but fragile hood, illustrated by exhibit 6 in evidence of record, is next subjected to "fulling" operations carried out by various rollers in the presence of hot water and steam, for the purpose of further compacting and shrinking the fur fibers to interlock them. The thusly "hardened" hood is subsequently subjected to certain other finishing operations.[3]

Appellant does not question that the principal processes to which the loose rabbit fur is subjected in the present circumstances—forming and fulling—yield a material which is properly termed fur "felt."[4] Rather it contends that, inasmuch as the hood and the felt were created simultaneously during the manufacturing operation, "the imported articles are not 'headwear of fur felt' because the felt did not have a separate, independent existence prior to the existence of the headwear." In support of its view, it relies on the so-called "preexisting material" doctrine, a judicial rule of construction to the effect that, before a given article can be said to be "made", "manufactured" or "composed" wholly or in part "of" a given material, as those expressions have been employed in certain provisions of previous Tariff Acts, that material itself must first be in existence. United States v. Accurate Millinery Co., supra; Cohn & Lewis v. United States, 25 CCPA 220, T.D. 49335 (1937), and cases cited therein.[5] Appellant's position is that, by virtue of TSUS Headnotes 9(f) (i) and 10(a), heretofore quoted, the language "headwear, of fur felt" is subject to the same rule of construction that was applied to language "identical" in legislative meaning and legal significance by the courts in *Accurate Millinery Co.* and *Cohn & Lewis.*

The Customs Court did not agree with appellant's contentions, nor do we. The difficulty with appellant's position, as we see it, is that the language "headwear, of

3. At trial, counsel for the importer and the Government were in agreement that the present importations are similar to and made in the same manner as the hat bodies in United States v. Accurate Millinery Co., 42 CCPA 229, C.A.D. 599 (1955), affirming Accurate Millinery Co. v. United States, 33 Cust.Ct. 191, C.D. 1652 (1954). We refer to those opinions for further details as to the manufacture of the merchandise.

4. As noted by the court below, one of appellant's witnesses testified that Exhibits 1 and 2, representative of the imported merchandise, were known in the trade as "felt hoods".

5. In *Accurate Millinery Co.*, for example, the merchandise was held not to be properly classified as hoods "composed wholly or in chief value of fur felt" because the felt did not have a prior, separate or independent existence before the manufacture of the hood. Similarly, in *Cohn & Lewis,* which dealt with woolen hat shapes, the court held that the language "manufactured wholly or in part of wool felt" presupposes that the material of which the article is made or manufactured exists before the article itself comes into existence.

fur felt" is not in fact identical, much less identical in legislative meaning or legal significance, to the language before the courts in *Accurate Millinery Co.* or *Cohn & Lewis*. In contrast to the phrases in issue in those cases, the expression "headwear, of fur felt" contains no limitation pertaining to the manner in which the headwear was manufactured or composed. Unlike such expressions as "manufactured of", "made of" or "composed of", the word "of", standing alone in the superior heading to items 703.50 and 703.55 or as particularly defined by Congress in General Headnote 9(f) (i), does not connote or imply pre-existence of the named material—fur felt. The words "manufactured of", "made of" or "composed of" are conspicuous by their absence as *sole* definitions in the definition of "of" appearing in Headnote 9(f) (i), although they do appear to be within the scope of the definition as formulated. Rather, it seems to us that the term "of fur felt" (or, in light of Headnote 9(f) (i), "wholly of fur felt" or "in chief value of fur felt") is a term of description or identification employed to denote what the headwear actually is, irrespective of whether the felt from which it was made had an existence prior to fabrication of the headwear or was simultaneously produced in connection with the making of the headwear itself. Headwear may be "of fur felt", in other words, without necessarily having to be made or manufactured from felt already in existence.

With respect to appellant's reliance on General Headnote 10(a), we need only again observe, as did the Customs Court, that Congress has not employed language in the superior heading to items 703.50 and 703.55 identical to that which this court previously has held necessitated the application of the particular rule of statutory interpretation known as the doctrine of preexisting materials. Conversely, appellant has not cited any judicial ruling in which the simple, unambiguous language "[article] of [material]" has been construed in accordance with that rule of statutory interpretation. Under the circumstances, we see no compelling reason to apply and extend the doctrine, illustrated by the cases heretofore noted, to a case where the language employed by Congress does not require it. See Alfred Kohlberg, Inc. v. United States, 27 CCPA 354, C.A.D. 111 (1940).[6]

6. Interestingly enough, *Kohlberg* involved construction of the expression "laces * * * and articles wholly or in part thereof," appearing in paragraph 1529 of the 1930 Tariff Act, as applied to certain cotton gloves with lace cuffs, crocheted in one continuous operation. The importer argued that the importations were improperly classified under par. 1529 because the lace did not have a separate, independent existence prior to the manufacture of the gloves, citing Cohn & Lewis v. United States, supra. Distinguishing that case and others cited therein, this court stated:

> * * * It is our view that Congress never intended that the provision "articles * * * in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a preexisting component material, * * *. Certainly, there is nothing in the language used that even suggests that it should be given the construction which is here contended for by the importer.

Neither the decision in the *Cohn & Lewis* case, *supra*, nor that in any of the authorities cited therein (although several are cited and discussed) support the importer's contention. In the *Cohn & Lewis* case, this court felt compelled to follow a long line of decisions by it, of which Congress must have had knowledge at the time it used the controverted provision "manufactured * * * of felt." The words "manufactured * * * of" necessarily imply or suggest that something that exists is taken and is manufactured into something else. The language at bar has no such connotation. To hold with appellant on this phase of the case would be more than an extension of the principle laid down in the *Cohn & Lewis* case and the other well considered cases which it followed—it would be an unwarranted and unjustifiable application of a principle, which, in our view, should not have and does not have any place whatever in the case at bar.

In light of our conclusion, we need not discuss the items of legislative history examined *in extenso* by the Customs Court and found by it to support the conclusion that Congress employed the present statutory language to avoid application of the preexisting material doctrine.

The judgment is affirmed.

Affirmed.